UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
*******************************
ROBERT FERRONE,              *
         Plaintiff,          *
   v.                        *
                             *       DOCKET NO.
SHAW'S SUPERMARKETS, INC.    *
                             *
         Defendant.          *
*******************************
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1. This action seeks equitable relief, compensatory and punitive damages and costs and attorney's fees for Handicap Discrimination and fraudulent and deceitful acts engaged in by the Defendants.

### Jurisdiction

2. Jurisdiction is invoked pursuant to 28 USC §1332 since it involves a civil action where the matter in controversy exceeds the sum or value of about $100,000.00 exclusive of interest and costs, between citizens of different states.

### Venue

3. This action properly lies in the District of Massachusetts, pursuant to 29 USC §1391(b), because the claim arose in this judicial district.

### Parties

4. The Plaintiff, Robert Ferrone, ("Mr. Ferrone" or "Plaintiff") is a United States citizen and resident of Windham, Rockingham County, New Hampshire.

5. The Defendant, Shaw's, ("Shaw's" or "Defendant") is a Corporation duly organized by laws of the Commonwealth with its Corporate headquarters located at 750 West Center Street, West Bridgewater, Plymouth County, Massachusetts.

COUNT I
(Handicap Discrimination)
Violation of Americans with Disabilities Act

6. Mr. Ferrone filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about May 27, 2010 claiming violation of the Americans with Disabilities Act against Shaws Supermarkets, Inc.

7. By letter dated November 19, 2010 and received on November 22, 2010, the EEOC dismissed Mr. Ferrone's claims and issues a Notice of Suit Rights letter stating that Mr. Ferrone must file his lawsuit within 90 days of his receipt of the letter.

8. Mr. Ferrone has satisfied his statutory pre-requisites as this Complaint has been filed within 90 days of Mr. Ferrone's receipt of the "Notice of Suit Rights" letter.

9. Mr. Ferrone was employed by Shaw's as a Produce Clerk from October 1, 2008 until February 21, 2010 when he submitted his resignation.

10. Mr. Ferrone was initially hired 3 days a week, from 6-11 AM.

11. Mr. Ferrone's immediate supervisor was Dan Mulcahy, Produce Supervisor.

12. In October 2009 Mr. Ferrone went to Leah Barrie in Human Resources to request a reasonable accommodation.

13. The employee break room and locker room was located on the second floor with no elevator.

14. Climbing the stairs (20 of them) presented issues for Mr. Ferrone and he asked if it would be possible to leave his coat down stairs in his work area so as not to climb stairs.

15. Mr. Ferrone explained that he had issues climbing the stairs because of his disability and if she needed a note from his doctor he would be happy to get one for her.

16. Ms. Barrie told Mr. Ferrone that if she did it for me, then they would have to for everyone.

17. Mr. Ferrone had made a similar request for accommodation the previous October, to keep his coat in his work area, and was told it was not possible because they were afraid of theft (that Mr. Ferrone would use his coat to put something underneath it to steal).

18. As a result, Mr. Ferrone often went to work in the winter without a coat so as not to worry about having to climb the stairs each day to store it and retrieve it.

19. Mr. Ferrone also was unable to fully enjoy using the break room because of the stairs.

20. Although he would use it infrequently, more often he did not because the issues with his disability made it very difficult at times to climb the stairs and he would spend his break on the first floor.

21. During the winter of 2008-2009, the Store Manager approached Mr. Ferrone while he was working and screamed at him for parking in the handicapped spaces in front of the store.

22. He told Mr. Ferrone that they were for the customers use and that they were for people who were more disabled than he was (even though Mr. Ferrone had a handicapped placard issued by the State).

23. He told Mr. Ferrone that his handicapped spots were limited and that he needed them for people who were more disabled than Mr. Ferrone was and who were store customers.

24. Mr. Ferrone told him that he was also handicapped and had just as much a right to park there.

25. Mr. Ferrone continued to park in the same spot, using his handicapped placard.

26. Approximately 6 months after Mr. Ferrone began working for Shaw's; his hours began to be cut.

27. No one's hours were cut as drastically as his were.

28. Many part-timers were working 20-22 hours a week and their hours were unaffected. (By the time Mr. Ferrone submitted his resignation in February 2010, he was down to 5 hours per week.)

29. In January 2010, Mr. Ferrone was called to the office upstairs because Dan Mulcahy, Produce Supervisor wanted to speak with him.

30. He told Mr. Ferrone that he knew he had a difficult time with the stairs but that he needed to speak with Mr. Ferrone privately.

31. When we were in the office, he asked Mr. Ferrone "what can we make you do to move faster because everything needs to be set up by 10 am".

32. Mr. Ferrone explained to him that he was moving as quickly as possible, and sometimes the medications he took for his disabilities could slow him down.

33. Mr. Ferrone described the medications that he was taking and what he was taking them for and the side effects.

34. Mr. Mulcahy told Mr. Ferrone that he had no idea that he was on so much medication.

35. Mr. Ferrone explained that he had the most difficulty in the afternoons and whatever he did, not to schedule him in the afternoon.

36. Shortly after the conversation, Mr. Ferrone was scheduled to work in the afternoons, even though he had asked not to be.

37. Approximately two weeks before Mr. Ferrone submitted his resignation; a new Produce Clerk by the name of Danny started working and was given the morning hours Mr. Ferrone had been working.

38. About 3 or 4 days before he submitted his resignation, Bob Trusdale, the Assistant Produce Manager told Mr. Ferrone he needed to train Danny (who was 20 years old) because he would be taking over his job.

39. He also told Mr. Ferrone that he would soon be out of there.

40. This was witnessed by several of his co-workers.

41. Seeing no other alternative, Mr. Ferrone submitted his resignation on February 21, 2010.

42. Mr. Ferrone is a handicapped person in that he suffers from impairments which substantially limit major life activities.

43. Mr. Ferrone is a handicapped person in that he was perceived by his employer as being a handicapped person.

44. Mr. Ferrone is a handicapped person in that he has a record of impairment.

45. In spite of his impairments, Mr. Ferrone could perform the essential functions of the position with reasonable accommodations.

46. Mr. Ferrone requested reasonable accommodations to perform the essential functions of his position.

47. Shaws either failed or refused to engage in the interactive process or to provide Mr. Ferrone with reasonable accommodations for his disability.

48. Instead, Shaws took adverse actions against Mr. Ferrone based upon his disability.

49. As a result of Shaw's conduct, Mr. Ferrone has suffered damages.

50. This Count is for Handicap Discrimination in violation of the Americans with Disabilities Act. .

WHEREFORE, Mr. Ferrone demands Judgment against the Defendant Shaw's, as follows:

A. That the Plaintiff be awarded compensatory damages;

C. That the Plaintiff be awarded emotional distress damages;

D. That the Plaintiff be awarded punitive damages;

E. That the Plaintiff be awarded attorney's fees, costs of suit, and interest;

F. And for such other relief as this Court may deem just and proper.

COUNT II
(Age Discrimination)
Violation of the Age Discrimination in Employment Act

51. The Plaintiff realleges the statements in paragraphs 1 through 50 as if stated herein.

52. At all times relevant hereto the Plaintiff was fifty-seven (57) years old.

53. On or about February 7, 2010, Danny Ross, an associate who was in his twenties transferred from the Beverly Massachusetts store to the Windham New Hampshire store.

54. Bob Trusdale, Assistant Produce Manager directed Mr. Ferrone to train Mr. Ross.

55. Mr. Trusdale informed Mr. Ferrone that Mr. Ross had been hired to replace Mr. Ferrone.

56. Mr. Trusdale also stated that Mr. Ferrone would "soon be out of there".

57. Mr. Ferrone constructively terminated his employment on February 21, 2010.

58. Shaws discriminated against Mr. Ferrone by hiring Mr. Ross, a significantly younger employee, to replace Mr. Ferrone.

59. As a result of the conduct described above, Mr. Ferroine suffered damages.

60. This Count is for age discrimination in violation of the Age Discrimination in Employment Act.

WHEREFORE, Mr. Ferrone demands Judgment against the Defendant Shaw's, as follows:

A. That the Plaintiff be awarded compensatory damages;

C. That the Plaintiff be awarded emotional distress damages;

D. That the Plaintiff be awarded punitive damages;

E. That the Plaintiff be awarded attorney's fees, costs of suit, and interest;

F. And for such other relief as this Court may deem just and proper.

PLAINTIFF REQUESTS JURY TRIAL ON ALL ISSUES SO TRIABLE

Respectfully Submitted,

Roberto Ferrone
By his Attorney

/s/ Jeffrey R. Mazer
Jeffrey R. Mazer
BBO #647110
Mazer Law Group, LLC.
220 Broadway, Suite 205
Lynnfield, MA 01940
(781) 596-8604

## COMMONWEALTH OF MASSACHUSETTS

Then personally appeared the above named Deborah Fishman and made oath that she has read the statement contained in this Request, and that they are true to the best of her knowledge and belief, before me, this __th day of December, 2010.

_____
Notary Public

My Commission Expires:

4829-4826-2664, v. 1